UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JASON DEROUEN | CIVIL ACTION |
| VERSUS | 13-4805 |
| | c/w 13-4806 and 13-5060 |
| HERCULES LIFTBOAT CO., LLC ET AL. | SECTION "L" (1) |

## ORDER & REASONS

Before the Court is Defendants', Y&S Marine, Inc., Sun Boats, Inc. Samsung Fire &

Marine Insurance Company, Tho Duc Nguyen, and Timothy Sykes ("Y&S"), Motion to

Bifurcate Trial. (Rec. Doc. 91). Plaintiffs take no position on the motion (Rec. Doc. 92), but

Defendant Hercules Liftboat Company, LLC ("Hercules") opposes the motion. (Rec. Doc. 93).

The Court has read the parties' briefs and heard oral argument on the motion and now issues this

Order & Reasons.

I.      BACKGROUND

This admiralty case arises out of injuries that Plaintiffs Jason Derouen, Nathaniel Parker,

and Lollo Francis, III, sustained while being transferred from a liftboat, the M/V TILAPIA, onto

the stern deck of the M/V Sun Ray on September 26, 2012. Plaintiffs were not seamen. In their

complaints, which are nearly identical, Plaintiffs claim that they were employed by Grand Isle

Ship Yard as instrument superintendents. Their duties included hooking up safety systems on

offshore platforms. Plaintiffs were quartered on a liftboat, the M/V TILAPIA. Plaintiffs claim

that they were being transferred in a personnel basket during a crew change, when they were

slammed several times against the deck and side rail of the crew boat. Plaintiffs each brought

separate lawsuits against the same Defendants --  Hercules, the owner and operator of the M/V

1

TILAPIA, as well as Y&S Marine, Inc. and Sun Boats, Inc.  According to Plaintiffs, Y&S operated and controlled the crew onboard the M/V Sun Ray, a U.S. Flag Vessel.  Sun Boats, Inc. owned the M/V Sun Ray.  Plaintiffs claim that the Defendants are jointly liable for their negligence.  They claim that the crew boat's captain, the captain of the TILAPIA, and the crane operator, were all responsible for the transfer.  They each ask for damages in the amount of $2,000,000,000.  On September 24, 2013, the three cases were consolidated.

The Court has continued trial for this case twice.  The Court initially scheduled trial to commence on September 29, 2014, but the Court continued the trial on May 14, 2014 at the parties' request due to Plaintiff's ongoing medical treatment.  (Rec. Doc. 75).  The Court again continued trial on November 25, 2014 due to the ongoing medical treatment of two Plaintiffs. (Rec. Doc. 25, 2014).  During a telephone status conference held on that date, Plaintiffs' counsel represented that Plaintiff  Lollo Francis had to undergo emergency surgery because a screw in his hardware penetrated his spine.  Plaintiff Francis alleges that Dr. David Wyatt, an orthopedic surgeon, "incorrectly inserted a pedicle screw into Francis' spine canal while performing a posterior instrumentation and fusion at L5-S1."  (Rec. Doc. 93 at 19).   At this time, all pretrial deadlines have been suspended and the Court has not scheduled a trial date.

## II.    PRESENT MOTION

### A.  Y&S Motion to Bifurcate (Rec. Doc. 91)

Defendants Y&S Marine, Inc., Sun Boats, Inc. Samsung Fire & Marine Insurance Company, Tho Duc Nguyen, and Timothy Sykes ("Y&S") filed the present Motion to Bifurcate and ask this Court to bifurcate the trial into liability and damages phases pursuant to Fed. R. Civ. Proc. 42(b).  Y&S argues that the facts clearly demonstrate that it does not bear liability because the "weather was within acceptable limits and [ ] the M/V Sun Ray maintained station under the

basket for the landing of personnel."  (Rec. Doc. 91-1 at 3).  Despite this lack of liability, Y&S

contends that it has been forced to invest incredible resources to defend against Plaintiffs'

injuries, as all of the Plaintiffs have "had surgery or are undergoing surgery and two of which

have had multiple surgeries."  (Rec. Doc. 91-1 at 5).  Further, "Y&S urges that it is patently

unfair to have them incur the undoubtedly outrageous costs associated with deposing the

approximately 35-40 medical providers and 9-12 damage experts when the evidence shows that

they do not have liability for the accident."  (Rec. Doc. 91-1 at 6).    Bifurcation, Y&S argue,

would establish the precise apportionment of fault and potentially allow a party(ies) to avoid

cumbersome and expensive medical discovery.  (Rec. Doc. 91-1 at 6).

  Y&S notes that "liability and damages are prime examples of issues that are distinct and

separate that should be tried alone" and that the Fifth Circuit has recognized the bifurcation of

liability and damages as "familiar."  (Rec. Doc. 91-1 at 8) (citing *Hardin v. Caterpillar, Inc.* 227

F.3d 368, 372 (5th Cir. 2000).   Y&S cites *McKellar v. Clark Equipment Co.*, a case where a

district court bifurcated the issues of liability and damages and based its decision on the

following three factors:  "(1)whether separation of issues would serve to expedite the disposition

of the action and conserve trial time for other resources; (2) whether separation would likely

avoid prejudice to any party at trial that may occur in the absence of separation of the issues; and

(3) whether the issues to be separated were essentially independent of each other for evidentiary

purposes so that there would be no need to duplicate the presentation of significant areas of

evidence in proceedings."  (Rec. Doc. 91-1 at 9) (citing *McKellar v. Clark Equipment Co.*, 1010

F.R.D. 93, 94 (D. Maine 1984)).   Looking to these factors, Y&S argues that bifurcation would

expedite the disposition of the case because, as the witness list currently stands, only twenty

witnesses will testify during the liability phase whereas fifty-five witnesses are listed to testify

during the damages phase.  (Rec. Doc. 91-1 at 11).  Bifurcation is "virtually certain", Y&S argues, to "facilitate more efficient settlement negotiations between the parties, as liability would be resolved."  (Rec. Doc. 91-1 at 12).  Y&S notes that the Plaintiffs are the only overlap witnesses.  (Rec. Doc. 91-1 at 12).  Looking to the other factors, Y&S argues that bifurcation would not result in prejudice to any party because it is a bench trial and there would not be duplicative presentations because the three plaintiffs are the only overlapping witnesses.  (Rec. Doc. 91-1at 12-14).

### B.  Plaintiffs' Response (Rec. Doc. 92)

The Plaintiffs respond and state that they take no firm position on the issue of bifurcation. They do note, however, that bifurcation of liability and damages is best utilized when there is a real possibility that the outcome of the liability trial will negate the need for a damages trial. (Rec. Doc. 92 at 1).  Plaintiffs contend the instant case does not present that situation because all of the named defendants are jointly liable, and Y&S presented a skewed version of the facts in its motion.  (Rec. Doc. 92 at 2).  Plaintiffs thus aver that Y&S's justification for bifurcation is not "grounded in reality."  (Rec. Doc. 92 at 3).

### C.  Hercules' Opposition (Rec. Doc. 93)

Defendant Hercules opposes the motion.  Hercules argues that Y&S submits its lack of liability as its main argument in support of bifurcation, but Hercules contends that Y&S bears liability and that bifurcation is not appropriate.  Hercules details many facts to support its contention, (Rec. Doc. 93 at 3-9), including that the Hercules' Crane Operator lowered the basket at the direction of the Y&S deckhand and that the M/V Sun Ray experienced difficulties maintaining position.  Such facts undermine Y&S's argument that it is free from fault, and

Hercules avers that "[j]udicial efficiency is not served [by bifurcation]…where liability is hotly contested." (Rec. Doc. 93 at 15).

Hercules emphasizes that "bifurcated trials 'should be the exception, not the rule.'" (Rec. Doc. 93 at 10) (quoting *Laitram Corp. v. Hewlett-Packard Company*, 791 F. Supp. 113, 114 (E.D. La. 1992)). Hercules counters Y&S's argument that bifurcation would provide expeditious resolution of the case, asserting that Y&S overstates the number of witnesses who will testify during the damages phase because the lawyers would not actually rely on that many expensive expert witnesses during trial, and that this Court would not allow such a prolonged bench trial. (Rec. Doc. 93 at 11). Moreover, Hercules notes that the three Plaintiffs would have to testify twice, in both the liability and damages trials, and other courts have held that evidentiary overlap supports a denial of bifurcation. (Rec. doc. 93 at 11-12) (citing *Conners v. United States*, 2008 WL 3154684 at *2 (E.D. La. July 31, 2008); *Contogouris v. Westpac Resources*, 2001 WL 5419735 at *4 (E.D. La. Nov. 9, 2011)).

Hercules counters Y&S's argument that bifurcation will generate meaningful settlement negotiations that will negate the need for a damages trial, arguing that no party will engage in settlement discussions without undertaking expensive discovery regarding damages. (Rec. Doc. 93 at 16). Hercules cites *Laitram Corp. v. Hewlett-Packard Company*, a case where Judge Feldman denied bifurcation and applied this reasoning, as support for its contention. Furthermore, Hercules notes that Plaintiffs could collect the entirety of any judgment obtained if Y&S is assigned any percentage of fault pursuant to general maritime principles. (Rec. doc. 93 at 16).

Looking to the prejudice factor, Hercules argues that it will be prejudiced if the Court bifurcates the liability and damages trials because the liability and damages are not distinct from

5

one another.  (Rec. Doc. 93 at 17).  Hercules' affirmative defenses of third-party fault and

Plaintiff's comparative negligence are tied to the facts of the alleged incident, which in turn,

depend on the Plaintiffs' credibility.  (Rec. Doc. 93).  Hercules contends that the medical

evidence will have bearing on the Plaintiffs' credibility, so it will be prejudiced by a bifurcation.

(Rec. Doc. 93 at 18).  Hercules also avers that the comparative negligence analysis will differ as

to each Plaintiff, so judicial efficiency and fundamental fairness require the Court to try liability,

including comparative fault, and damages together.  (Rec. Doc. 93 at18).

Hercules next argues that the possible medical malpractice claim against third-party Dr.

David Wyatt further undermines any argument for bifurcation.  (Rec. Doc. 93 at 19).  Hercules

argues that "[i]f this case warrants joinder of Dr. Wyatt, he will have to be called to testify on

both liability issues…and damages issues," thus requiring additional fact discovery prior to any

trial and an expert witness would have to testify in both cases.  (Rec. Doc. 93 at 19).  Bifurcation

would therefore undermine judicial efficiency and prejudice Hercules because it would have to

incur "unnecessary discovery costs related to the bifurcated testimony of Dr. Wyatt."  (Rec. Doc.

93 at 19).

### D.  Y&S Reply (Rec. Doc. 96)

Y&S filed a reply and argues that neither party demonstrated how bifurcation would

result in prejudice and that the jurisprudence relied upon by Hercules does not establish

impropriety in bifurcating the trial.  (Rec. Doc. 96-3).  Y&S emphasize that Plaintiffs do not

refer to prejudice in their motion.   In response to Hercules's assertion that it would be prejudiced

because the medical evidence relevant to damages also goes to credibility, Y&S avers that there

is no hindrance to Hercules presenting these credibility witnesses at the liability trial.  (Rec. Doc.

96-3 at 3).  Y&S also argues that any allegations against Dr. Wyatt for medical malpractice

"relate to damages and would be appropriately considered in a trial on damages."  Y&S asserts that "[u]nless Dr. Wyatt is added as a party, an approach which would complicate this matter further, his anticipated testimony (if presented live) would relate more to damages than to liability and could be presented accordingly."  (Rec. doc. 96-3 at 3).

### III.    LAW AND ANALYSIS

Federal Rule of Civil Procedure 42(b) provides as follows: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.  When ordering a separate trial, the court must preserve any federal right to a jury trial."  Fed. R. Civ. P. 42(b).  The present case is based on Fed. Rule Civ. Proc. 9(h), so a jury trial is not an issue.  "A motion to bifurcate is a matter within the sole discretion of the trial court, and the appellate court will not reverse the trial court's decision absent an abuse of that discretion."  *First Texas Sav. Assoc. v. Reliance Ins. Co.*, 950 F.2d 1171, 1174 n.2 (5th Cir. 1992), (citing *Gonzalez-Marin v. Equitable Life Assur. Soc.*, 845 F.2d 1140, 1145 (1st Cir. 1992)).

The Fifth Circuit has recognized an important limitation on ordering a separate trial of issues under Rule 42(b): "[T]he issue to be tried must be so distinct and separate from the others that a trial of it alone may be had without injustice."  *Swofford v. B. & W., Inc.*, 336 F.2d 406, 415 (5th Cir. 1964), *cert. denied*, 379 U.S. 962, (1965).  Moreover, "even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice." *Laitram Corp.*, 791 F. Supp. at 115 (quoting *Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.*, 707 F. Supp. 1429, 1433 (D. Del. 1989)); *see also Interstate Restoration Group, Inc. v. Al Copeland Investments*, Civ. A. 07-0970, 2009 WL 1870787 (E.D. La. June 25, 2009).

"Prejudice is the Court's most important consideration in deciding whether to order separate trials under Rule 42(b)."  *Laitram Corp.*, 791 F. Supp. at 115.

Rule 42(b) provides three separate justifications for bifurcation.  "A court may separate issues if (1) it would avoid prejudice, (2) it would be convenient to do so, or (3) it would be economical or would expedite the litigation to do so."  *Laitram Corp*, 791 F. Supp. at 115. While courts usually look to whether bifurcation will result in an efficient resolution of the case and conserve judicial resources, this case presents another aspect that deserves equal standing – the potential prolonged delay of trial if the Court does not grant bifurcation.  Such a consideration goes to whether bifurcation will avoid prejudice to the parties.

The instant case presents a unique issue: the accident at-issue occurred on September, 26, 2012, over two years ago, and the Court has continued trial twice due to the Plaintiffs' ongoing medical treatment with no completion in sight.  Indeed, two of the three Plaintiffs continue to undergo treatment, and the parties have been unable to predict when this treatment will end. Moreover, Plaintiff Francis has a potential claim for medical malpractice that has not ripened yet, a claim that Hercules contends undermines Y&S's argument for bifurcation.  Yet, if Plaintiff does have a legitimate malpractice claim, this will result in further delay because he will have to pursue the administrative channels before any proceeding in this Court.  This delay coupled with any further delays due to Plaintiffs' ongoing medical treatment could postpone trial for five years from this date.   Although the parties are presently receiving compensation, the factual evidence will be stale by the time trial commences, and all parties will be in jeopardy in view of that fact.

Hercules presents a valid argument that bifurcation is not necessary because the parties have taken most of the witnesses' depositions, and their testimony has therefore been "preserved," but the undue delay of trial will still affect witnesses' memory at trial.  (*See* Rec.

8

Doc. 102).  There is, in effect, a limit to how much a deposition can aid a live witness's testimony, and the Court finds that these depositions are not enough to offset the prejudice the parties will incur if the Court does not bifurcate the trial and witnesses testify approximately seven years after the accident.  The Court thus exercises its discretion to bifurcate the trial into a liability and a damages trial.

## IV.    CONCLUSION

For the foregoing reasons, Y&S's Motion to Bifurcate (Rec. Doc. 91) is hereby **GRANTED.**  The Court will contact the parties to pick a date for the liability trial.

**IT IS FURTHER ORDERED** that the telephone status conference, currently scheduled for January 26, 2015 at 3:30 p.m. is hereby **CANCELLED**.  The Court will schedule a telephone status conference for a later date when it schedules the liability trial.


New Orleans, Louisiana this 23rd day of January, 2015.


UNITED STATES DISTRICT JUDGE